# FIRST DEPARTMENT.

## GENERAL TERM, MAY, 1874.

HOPPOCK *et al.*, appellants, v. TUCKER *et al.*

*Will — construction of — devisees taking as a class.*

A testator, after making certain bequests, divided the residue of his estate into six equal parts. Out of one of the sixth parts the testator gave $10,000 to his grandson, E., and the remainder of such sixth part he devised "in equal proportions, share and share alike, unto" A, B and C, "the children of my deceased daughter." C died before the testator, unmarried, and leaving A and B surviving.° *Held,* that C's share did not lapse but survived to A and B, it being the intention of the testator, as manifested by the whole will, that the family of his daughter should take the sixth part as a class.

APPEAL from a decree of the surrogate of New York. The questions litigated arose in the final accounting of the executors of the will of Jacob Hoppock, deceased. The surrogate decided that the devisees referred to in the opinion took as a class.

*Joseph A. Welch,* for appellant, cited *Westcott* v. *Cady,* 5 Johns. Ch. 334; *Bunch* v. *Hurst,* 3 Des. Ch. 273; *Campbell* v. *Campbell,* 4 Bro. C. C. 12; *Perkins* v. *Baynton,* 1 id. 106 ; *Right* v. *Compton,* 9 East, 276; *Lashbrook* v. *Cock,* 2 Mer. 70; *Downing* v. *Marshall,* 23 N. Y. 373; 1 Jar. on Wills, 295, 296; 2 id. 162; 2 Kent's Com. 351.

*John E. Parsons,* for respondent.

DAVIS, P. J. The testator, after first making provision for the payment of his debts and funeral and testamentary charges and expenses, and for his widow during her life, and after making certain specific bequests, proceeds to divide the residue of his estate, real and personal, into six equal shares or parts. His language indi-

cates in strong and clear terms his intention that this equal division shall apply to and embrace every remaining portion of his property, including not only the provision for his widow if she does not accept the same in lieu of dower, and the remainder thereof after her decease if she shall accept, but also "all legacies which for any reason shall fail to take effect." There can be no doubt, therefore, but that the division to be made into six equal shares is to embrace the whole residue, for the purpose of carrying out the scheme of disposition contained in the next following provisions of the will. Nor can there be any doubt that the number of his children dictated and controlled the number of shares. The testator had had six children (one of whom was deceased), among whom or their families he set about making a distribution of the six parts into which he had directed his estate to be divided. To each of his living children he gives directly, or in trust for his or her benefit, one of such equal sixth parts, carefully making provision for the issue of such child in case of his or her death before the death of the testator. His deceased child was "Ann Maria, late wife of John C. Tucker," who had left her surviving three children, John Compton Tucker, Hubert V. W. Tucker and William Edgar Tucker, all of whom were living at the time of the making of the will. Out of the sixth part (which may be said to represent Ann Maria's share) the testator gives $10,000 to his grandson, Edward A. Hoppock, and the remainder of such sixth part he gives, devises and bequeaths, "in equal proportions, share and share alike, unto John Compton Tucker, Hubert V. W. Tucker and William Edgar Tucker, the children of my deceased daughter, Ann Maria, late wife of John C. Tucker."

William E. Tucker having died before the testator, unmarried, leaving no descendants, and leaving him surviving his two brothers, the only surviving children of said Ann Maria, the question is whether the share that would have come to William, had he outlived the testator, has lapsed or has survived to his brothers as representing a class, to wit, the children of Ann Maria.

The seventh clause of the will sheds a strong light upon the intention of the testator, both as respects his design to make the division include the whole residue of his property, and to divide it so that his six children should stand upon what he deemed to be an equal and impartial footing. It must be seen, I think, from that provision of the will, that the testator intended that each child, or the family of each child, should take the share given to him or them in such

manner that it should pertain to his or her children as a class, and not as separate individual legatees.

The testator says: "In order that there may be a fair and impartial division of my residuary estates and property aforesaid *amongst my children*, it is my will, and I do order and direct that the following charges be made against the respective shares, that is to say, my deceased daughter, Ann Maria, having, during her life-time, received from me the equivalent of $1,000, that sum, with interest thereon from the day of my death, shall be charged against *the share of her children* hereinbefore mentioned and specified in the final settlement of my estate." The testator then proceeds to make like charges against the shares of his other children, so as to accomplish his manifest purpose of giving to each child, whether living or dead, when the will takes effect, what he intends shall be a fair and impartial portion. It is manifest that, in his mind, it was Ann Maria's share that he was giving to his children, just as it was intended to be Caroline Virginia's share that, under the sixteenth clause, should go to her children in equal shares, provided she should chance to die before the testator. And so in respect to each of the other children.

It cannot be questioned that, in giving to Ann Maria's children so much of the one-sixth, parceled out to represent her share, apt words are used, unless their significance is to be controlled by a manifest intention to the contrary, to constitute the several persons named individual legatees or *personæ designatæ*.

The several children of Ann Maria are named, and the gift is to them "in equal proportions, share and share alike;" and ordinarily, under numerous authorities, those words would be construed to be a gift to each grandchild of a separate and individual interest as tenant in common.

This is the doctrine of the elementary books and of authorities too numerous to be cited. But it is another question whether, where the scheme of the will, in all its various provisions taken together, shows that the grandchildren were not named with such an intention, the accident of naming them must have the effect to prevent the intention to treat them as a class from prevailing. If, for instance, the testator had followed the eleventh clause, in which the children of Ann Maria are severally named, by the words "they take as a class representing their mother," there could be no doubt that the intention thus expressed would control the ordinary or

technical force of any preceding nomination of persons. What the testator has done, seems to me to be as potent a declaration of his intention, though not as clear, as the one supposed.

There is no special force in the words " in equal proportions, share and share alike," taken by themselves, because if the three sons of Ann Maria had not been named, those words would have had no effect beyond fixing the proportions of the children as a class. They are entitled to no other effect now, for whether the Tuckers take as a class or take as individual legatees, those words have their full force as standards of measurement, which is all they were intended for.

The several names of the children of Ann Maria are followed by words of classification, " the children of my deceased daughter, Ann Maria." They were all of her children. It was *her share* that the testator was disposing of after dividing his whole residuary estate into *six equal shares*, representing the number of all his children, and counting the deceased daughter, Ann Maria, as standing for one of the shares ; and in consummating his purpose of a fair and impartial division " amongst my [her] children," he specifies the amount that has been received by Ann Maria in her life-time, which shall be charged " against the share of her children." He nowhere treats that share any otherwise than as he treats the shares of other children, except as he diminishes it by the legacy. It would defeat, as it seems to me, the intention of the testator if the rule of construction claimed by the appellants were applied. The object of all rules of construction is to reach with certainty and precision the intent of the testator. In the absence of countervailing intent, manifest in the will itself, the general rules of the decided cases are to be followed and applied as the best means of determining intent ; but where the intent is manifest the legal effect of words must give way before it.

We think the conclusion of the surrogate was right, and that the decree should be affirmed.

DANIELS and LAWRENCE, JJ., concurred.

*Decree affirmed.*